Good afternoon, Your Honor. May it please the Court, Mark Upton, Assistant Federal Public Defender from the Middle District of Louisiana. Your Honor, I represent Dwayne Patterson, the appellant in this matter, who is appealing his conviction on two counts after a jury trial in 2014 arising from facts that occurred in 2011. Count 1 was possession and attempt possession with intent to distribute more than 5 kilograms of cocaine, and Count 2 was conspiracy to possess with intent to distribute more than 5 kilograms of cocaine. Mr. Patterson was convicted after jury trial. He was sentenced to 120 months on each count concurrent, and then this appeal arose. I would first like to address Count 1, which is the possession or attempt possession with intent to distribute. This was a reverse sting operation in which rather than the government attempting to buy cocaine from my client, my client was enticed to buy cocaine or was offered to buy cocaine from the government. There was involvement of an agent, of a CI, Mr. Nero, and as part of this operation, the government did what's called a flash, which is a marketing ploy where the government met with my client and showed him that they had product to sell, that there was product to sell. That occurred when the CI and my client went to a designated place. The agents, undercover agents, came up, pulled up next to the car in which my client was a passenger, passed a duffel bag with 12 kilograms of cocaine in it to my passenger through the passenger window to my client who was sitting in the passenger side. At the urging of the confidential informant, the bag was opened, my client examined the contents. He was ordered to slice it and dice it by the confidential informant. He opened one of the kilos, took a small amount out, put it in a dollar bill, rolled up a dollar bill and put it in his pocket. In less than 4 minutes and 30 seconds later, the duffel bag was sealed and re-zipped and put back, passed back to the agents. Our contention is there was no possession in that scenario. Possession can be actual or constructive. Correct. An actual possession, constructive possession requires that there is an act of dominion or control. Control, and the dominion part I think implies, when we looked at the definition of dominion, it implies some type of temporal element beyond a mere examination of the product to see if it is worthy of trying to go on later and attempt to make a deal at a later time. As Officer Busman testified to the agent in this matter, there was never any intent on his part to let Mr. Patterson leave with that cocaine. In fact, you have the video that you can watch, there was never any intent on the part of Mr. Patterson to buy that cocaine. In fact, that particular cocaine. In fact, Mr. Patterson was surprised at the amount of cocaine that was shown. What about the attempt? Well, for attempt, I would refer the Court, I would refer to the Fifth Circuit pattern jury instructions on attempt, which says, which requires that in order for attempt, the defendant first, the jury must find that the defendant intended to commit, and the substantive offense in this case would be possession with intent to distribute, which there was no intent to possess that cocaine with intent to distribute. And second, the jury would have to find that the act that constitutes a substantial step towards the commission strongly corroborates the defendant's criminal intent and amounts to more than mere preparation. I would submit that all that is present in this case is mere preparation. And I refer the Court to, for example, to the Toro case cited in our brief. In the Toro case, it was a reverse sting with a kilogram of cocaine, and in that case, the object of the investigation took the cocaine, opened up a briefcase, put it in the briefcase and locked it, and was ready to leave with it. That is, in fact, an example of exhibiting dominion or control over that cocaine. That didn't happen in this case. But can't negotiations constitute a substantial step? I don't think this was negotiation as much as, in fact, the agent, in his testimony, called it a flash. His description of what it was, was that this was, we're just showing him what we've got. And I think it, and for this case, I thank my opposing counsel in pointing out in his submission for updated citations, the De La Garza v. Villareal case, which was a marijuana case, but it was very similar. That does seem to address the actual possession. See, I think it addresses the issue on point. So I think there is no possession when you're making an examination of the drugs. That's what occurred in this case. What was the purpose of the examination? To make sure that they, to, for my client, my client intended to establish that, A, there was a product of sufficient quality that he could go on and try to find people who would come. He was a middleman. He was not the eventual distributor. This was negotiations to eventually acquire possession, even if there was no physical possession for the brief time it was in the car. This was a step in the United States, in the agents convincing my client that there was product available. You look at it from your client's standpoint. Your client was attempting to get the information so that he could make the transaction, even if it's for other people. Except there was no intent to do that that day. In fact, there was nothing further that occurred. I'm not talking about timing that day. We'll concede for argument that there wasn't any possession. That was just this flash, or whatever it's called. But the whole purpose of the flash was to lead to a transaction. But what we're talking about is possession with intent. Well, what I'm leading up to is attempted possession. Well, and I would submit that this is a mere, that this is— And I want to ask you some questions about attempted— Without giving away too much, I'm probably prepared to agree with you that he never possessed it. My problem is, count one of the indictments says this whole—it's all wrapped up in one nice, neat little sentence. The defendant herein knowingly and intentionally did possess and attempt to possess. And you had a motion to dismiss count one, but it didn't seem to address what my concern is. Because it almost reads as if all they've got to show is one of them, and they got it. And so let's talk about attempt to possess. I mean, to me, the most evidence of his attempt to possess is his statement that he intended to possess it. I want it. I'm going to buy it. I'm going to bring the money. This flash was for the purpose of determining, I guess, the quality of the product. Is this something I want to buy or get these other people to bundle their money and buy the product? Unless he was just puffing, he evidenced every intent to possess it straight out of his own mouth. I think that's exactly, Your Honor, what was— He was puffing. He was puffing. If you listen to the telephone conversations that occur between the CI and the agent, the CI is pushing my client, pushing my client. These guys are going to go. If you don't do this deal, get your guys. Patterson never had any—he was—and he says, oh, they want it all. They want it all. They want it all. In fact, he never had anybody until the very end of the— He showed up with $20,000. Later on, on the second deal, on the— Whenever it happened, he showed up with $20,000. $20,000 was all that was brought. Yeah, that's right. Well, he says that's all that was— Well, no, that's all that was found. That's all that was seized. That's all that was counted and seized. That's all that was counted and seized. All right. Let's take—and let's address that count, Your Honor. Let's address count two, because I agree there was a conspiracy. There certainly was a conspiracy to possess with intent to distribute. But let's take the worst-case scenario. The agreed-upon price was $21,500 for amounts of eight or more. All right. There never was a meeting of the minds as to how much was going to be purchased. Patterson was puffing, oh, they got $100. They want to buy $30 a week. They got—and there really is never anybody in the end. $21,500 for eight kilos or more. That was what Nero said. That's my bottom rock, bottom line price. Assume that Honoré brought $100,000. It's still not enough to buy five kilos. So while there is a conspiracy, how can there be a conspiracy to possess with intent to distribute five kilos when you don't have enough money to buy five kilos? And I understand factual impossibility is not necessarily—it's not necessarily a negative, that verdict. But factually, factually, that's all that occurred. So we submit that, A, there was no possession for count one, no attempt possession for count two. They don't have to show one or the other? They got to show both? They would have to show one or the other, and I don't think they showed either one. I think that the De La Garza-Bilareal case is right on point with Patterson's—with this case in Patterson. And I submit that there was—while there was a conspiracy, there's not enough to show conspiracy to possess with intent to distribute more than five kilos. Refresh my memory. This is the fifth case, and it's gone. What was the summons for each of these? He was sentenced to the mandatory minimum of 120 months, 10 years on each count to run concurrent. And that's another one of the issues that I have, but I don't think it's—which is that the government was the one who determined how much cocaine went in that duffel bag. He actually checked—Agent Busman testified, yeah, he could have put one, he could have put two, he could have put 10. He put 12 in because that was all that would fit in. He actually checked out 15 kilos, but he couldn't get 15 kilos in the bag, so he only brought 12. That leads to the government tripping the wires for these mandatory minimums if that type of behavior is countenanced. And I find that disturbing, but I'll reserve the balance for— Yes. You've saved time for rebuttal, Mr. Upton. Thank you. Mr. Croswell. Good afternoon. Ryan Croswell on behalf of the United States, and may it please the Court. The government induced more than sufficient evidence at trial for a reasonable jury to conclude that the defendant was guilty of both counts of the second superseding indictment. And I'll start with the first count since that seemed to be the focus of the panel's questions. The government introduced three police officers, the testimony of a confidential informant named Clarence Nero, and a 33-minute video of the defendant and Mr. Nero finalizing the preparation of a brokering of a sale of 12 kilograms of cocaine. Not only did that demonstrate the defendant went beyond mere preparation to commit the offense, it showed there was very little left for him to do in order to consummate the deal. And as this Court is aware, the fact that the purchasers didn't end up coming up with the money does not negate his attempt to commit the offense. Now, there's several things that came up. When did he ever possess the cocaine? Your Honor, I think based on the De La Garza decision that he probably didn't possess the cocaine. But as Judge Graves mentioned, the government can allege in the conjunctive and prove in the disjunctive. The verdict form is page 308 of the record, and it said possession or attempt to possession. And the government proved attempt to possession. The defendant's brief largely, when it talks about attempt, it largely avoids the issue. But when it does address it, it sort of bootstraps it to the possession argument. But I think as the panel understood from its questions, the attempt to possession was attempt to broker the deal later that day. And it's clear that's what he was trying to do. And again, you know, the points about control and dominion, that all goes to possession. But Toro is an apposite to the question of attempt, and so is De La Garza. Neither decision addresses attempt to possession. Mr. Patterson was a broker. He was trying to find purchasers and buyers, purchasers for the drugs. And the record is clear that, in his own words, he had done that. Exhibit 1B is the video of Mr. Nero and the defendant in the car. And within the first 30 seconds, he says, my people are ready. And, you know, he's using the coded language, but it's clear from the context he's talking about his purchasers. And then 90 seconds into Government Exhibit 1B, the video, he gets a call, a phone call. And he tells Nero, oh, that's my guy. And he talks to him for 30 seconds. And he tells the person he'll see him in 20 minutes. So the jury knew from that that even before these gentlemen met, he had already laid the groundwork for, you know, setting up this transaction. Well, if you're only the broker and it goes through and your people buy it from the sellers, does the broker ever possess? Your Honor, I think the jury certainly could have reasonably found that, as a broker, he would have taken possession of the cocaine and given it to his purchasers. And beyond that, I think the other thing the jury could have found, they were disrupted on possession and joint possession. And so the jury may have inferred from that that, as the broker, he, along with the purchasers, would take the drugs into their control. I don't think that a defendant in, say, where multiple people are charged with possession with intent to distribute and they're buying it, I don't think that you would ever say, well, the one person that handled the drug is the one who was in the possession of the drugs. So I know that there was also questions as to whether or not he went beyond mere preparation. First of all, he flew into Baton Rouge for this, and that's in page 737 of the record. So the defendant flew into town. Then, as I said, we know that he had laid the groundwork before he met with Nero. Then the drugs come at 1630, and the government strongly disagrees with the portrayal of the facts. And when I say 1630, I mean 1630 in Government Exhibit 1B. I think if you watched the video, this idea that he was surprised is inaccurate. If he was surprised, he got very comfortable very quickly because he had the drugs in his lap for nearly four minutes. And then after that, he was in the car for another 15 minutes. This is a 33-minute video. And from the record, 743 to 749, you can hear Nero describing this exchange. And in Government Exhibit 1B from 1630 to 20 minutes and 30 seconds, you can watch it. But he takes one of the bricks of cocaine out of the bag. He puts it in the center console. He cuts it open. He tastes it. He negotiates the price. He talks about the logistics. And he takes a sample back for his purchasers. And at 21 minutes into the video, he says, my people are ready to get it all today. And then at 23 minutes and 57 seconds to 24 minutes and 7 seconds, he says, all my guy needs to do is make a phone call. So in his mind, all that's left is for him to take the sample back. And the fact that the deal was never consummated, again, that doesn't negate all the things he did that went beyond mere preparation. And I think that a good comparator case for the court is the Mandagiano decision, which is cited in the government's brief and is also one of the cases cited in the court's jury instructions on attempt. And in that case, all the defendant did was make four attempts to find heroin from an undercover DEA agent. He was unsuccessful in doing so. And that was sufficient to confirm the conviction. This defendant found Nero, got in the car, sampled the drugs, and took a sample back for his purported purchasers. And again, it never happened. But that doesn't negate his attempt to commit the offense. I think there was a question about puffing. And that argument more relates to the defendant's, I think he made that more in the context of the second count, the conspiracy count. And first, I think it's important to recognize that the defendant does not contest that the government established the conviction for conspiracy to possess and attempt to distribute. It's just a question about the agreement on the amount. And he talks about how the defendant was merely puffing. Well, that, I think, is less an attack on the sufficiency of the evidence as it is an invitation for this court to sit in the place of the jury. They heard the defense counsel's argument in closing that he was merely puffing. They heard the witnesses, and they heard the recordings. And they didn't think that he was merely puffing. But even if he was puffing, the reason to do that would be because he is trying to get Nero to sell him these drugs, specifically for the purpose of acquiring the full amount of the drugs. And the defense counsel points out that the purchasers only ended up showing up with $20,000. But as the Burke decision cited in our 20HA letter points out, it's not, for Encoda offenses, the amount of drugs that actually end up at the scene. It's what the agreement was. And I think it's quite clear the defendant was agreeing to purchase the full amount of the drugs. If you look at Government Exhibit 2, this is the video, or excuse me, it's a recording of their conversation from May 13th. Within the first 30 seconds, the defendant says, we're ready to get it all. And the jury could have inferred he meant the 12 kilograms that were put in his lap. In their prior meeting. But didn't he have enough money for that? Your Honor, it's unclear. He had, at the time when his purchasers showed up, they only had $20,000. But it's also clear from the record that he was dealing with multiple purchasers. And I can give several sites of the court. At 768 of the record, Mr. Nero is describing recording 7A. He talks about how he has a purchaser with $100,000 and $50,000. The court can hear that portion of the recording. Again, it's Government Exhibit 7A from 30 seconds to a minute and five seconds. At 10A, from 13 seconds to 40 seconds, the defendant talks about having purchasers with $100,000, which I think the jury could infer meant $100,000. And then Exhibit 12A, the defendant makes reference to having one purchaser bringing $44,000 and another bringing $100,000. And he doesn't use the word $100,000 or $44,000. He says $44,000 and $100,000. But I think a reasonable jury could infer he meant $100,000 and $44,000. So again, I would submit that oftentimes these offenses are interrupted by the police before anyone ever shows up with all the money. But the instructions for conspiracy for 21 U.S.C. 846 don't require that someone brings all the drugs or all the money. It's that there is an agreement. JUDGE McANANY What would be the practical effect of our affirming the conspiracy and reversing the possession and attempted possession? He got the same sentence for both, so run concurrently. Is there any other practical effect of that hypothetical? I'm not saying we're doing that. I'm just curious. MR. GOLDSMITH I don't believe so, Your Honor, because as you mentioned, both counts trigger the mandatory minimum. JUDGE McANANY No difference on the supervised release or anything like that? MR. GOLDSMITH Your Honor, I suppose a special assessment of $100 may need to be returned to the defendant. JUDGE McANANY There was $100 on each? MR. GOLDSMITH I believe so, yes, Your Honor. JUDGE McANANY And you're addressing the practical effect with regard to serving a sentence? MR. GOLDSMITH Yes, Your Honor. JUDGE McANANY I'm surmising, I guess, that there could be some difference in terms of practical long-term effect between having a conviction for possession versus having a conviction for attempting to possess. MR. GOLDSMITH Well, I'm not sure. Having 8 kilograms of cocaine, if I'm sitting there reading somebody's judgment of conviction, actually being in possession of it seems to me to be more serious than the guy who tried to get possession of 8 kilograms of cocaine. MR. McANANY I see. MR. GOLDSMITH One seems more like a more serious thing. JUDGE McANANY There's no statutory difference? MR. GOLDSMITH Right, Your Honor, I think there's no statutory difference, and Judge Graves, to address your concern, the indictment says possession and attempted possession. Of course, the verdict says for conjunctive and disjunctive. So, you know, even if the conviction remains, it's still going to say attempted possession or possession, and I think that's just kind of the nature of it. But again, I would urge the Court strongly to consider all the steps he took towards committing this offense. And even if he didn't possess the drugs, he clearly was attempting to possess the drugs with all the actions he was taking. There's very little left he could have done at that point. And we don't know why the deal wasn't consummated that day, but again, it didn't need to be for an attempt to be established. I guess that the panel has no further questions. MR. MCANANY All right. Thank you, Mr. Croswell. And the Court wishes to thank you for your professional – I know, yeah, I'm just speaking to him. Thanking him for his professional candor and calling attention to adverse authority. I mean, we certainly expect that of officers of the Court, but we particularly appreciate it, and I hope you'll convey that message directly to Mr. Green on behalf of the Court. MR. MCANANY Thank you, Your Honor. I appreciate that.  MCANANY Okay.  O'Brien. MR. O'BRIEN Yeah.  MCANANY Okay, Mr. Upton. You save time for rebuttal. MR. O'BRIEN I agree with you, Your Honor. He was very professional, and I'm quite grateful to his candor with the Tribunal. I – just briefly, I think the puffing – there's one other factor that I think relates to the puffing, and that's the testimony of Honore. Honore, who was the one who eventually came with the money, didn't even have the money. He had to go borrow the money from Perkins, who was also somebody who showed up kind of to watch and make sure that his money in this deal was covered. All of those other calls, if you listen to those phone calls, Nero's putting extreme pressure on Patterson that this deal is going to go away, this deal is going to go away. No, I got it. I got it. I got it. And that's what puffing is. Oh, I got this deal. I got somebody with 100. I got somebody – in the end of the day, he didn't. He only had somebody who showed up with $20,000. MR. MCANANY Well, isn't that negotiating? MR. O'BRIEN No, I think that's – I think that's lying to keep the guy in town so that his third parties who have the dope don't leave, which is what Nero was telling him they were fixing to do. And Patterson, in desperation, was just trying to keep him on the scene so he could try to complete some kind of deal, but no negotiated deal for any specific amount, whatever he could buy. And at the point that he – that the guy shows up, all he can buy is less than a kilo. MR. MCANANY All right. Thank you, Mr. Upton. MR. MCANANY Thank you, Mr. Chairman.